UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-61865 – CIV – DIMITROULEAS/Torres

SHARON ADAMS, STACEY
CAMERON, VERNELL ROBERTS, and
CHERYL SOTO, individually and on behalf
of others similarly situated,

        Plaintiffs,

vs.

                                                      **COLLECTIVE ACTION**

ABN AMRO, INC.; ABN AMRO
MORTGAGE GROUP, INC.; LASALLE
BANK CORP., and STRATEGIC
STAFFING, INC., jointly and severally,

        Defendants.

_____/

**JOINT MOTION AND MEMORANDUM OF LAW**
**REQUESTING CONDITIONAL APPROVAL OF CLAIMS PROCESS,**
**APPROVAL OF FLSA COLLECTIVE ACTION SETLEMENT**
**AND ENTRY OF ORDER OF DISMISSAL**

The parties, by and through their undersigned counsel, and pursuant to Local Rule

7.1, hereby move the Court to approve the attached Settlement Agreements and enter an

order of dismissal with prejudice.

A copy of the executed Settlement Agreement between Plaintiff and Defendants

ABN AMRO, INC.; ABN AMRO MORTGAGE GROUP, INC., and  LASALLE BANK

CORP. ("ABN Defendants"), is attached as Exhibit 1, and a copy of the executed

Settlement Agreement between Plaintiffs and Defendant STRATEGIC STAFFING, INC.

("Strategic") is attached as Exhibit 2.  A copy of the parties' proposed Individual Release

Agreement is attached as Exhibit 3.  Concurrently with this Motion, and in accordance

with the Court's Order to Show Cause, entered September 13, 2007, the parties are filing

a Joint Stipulation for Dismissal With Prejudice and proposed Order of Dismissal, so that the case can be dismissed upon the Court's approval of the settlement.

The parties have agreed that the terms reflected in the Settlement Agreements are mutually satisfactory and represent a fair and reasonable compromise of the claims asserted, and therefore seek the Court's conditional approval of a claims procedure by which each Plaintiff will receive written notice of the funds allocated to their individual claims, and an opportunity to accept the settlement by executing an Individual Release Form.[1]  Thereafter, and within a reasonable period of time, Plaintiffs' counsel will notify the Court of the number of Plaintiff's who have accepted the settlement, and whether there are any objections to the settlement, so that the Court can decide whether a fairness hearing is necessary.  Upon the Court's final approval of the settlement, the entry of the attached order of dismissal will consummate the Agreement between the parties, and conclude the litigation.

## INTRODUCTION AND PROCEDURAL BACKGROUND

On December 8, 2005, Plaintiff Sharon Adams filed a collective action Complaint styled *Sharon Adams, et al. v. ABN AMRO, INC.,  ABN AMRO Mortgage Group, Inc. and LaSalle Bank Corp.*.  The original complaint raised a single claim under the FLSA based on ABN's failure to properly calculate overtime pay, by failing to include non-discretionary employee bonuses in the overtime rate.  On January 30, 2006, an Amended Complaint was filed, which added Strategic Staffing, a company that supplied ABN with temporary employees, as an additional party, under a joint employment theory.

After filing the Amended Complaint, Plaintiffs moved to facilitate notice of the collective action pursuant to 29 U.S.C. § 216.  By Order entered April 27, 2006, the

---

[1] The process by which the allocations were made by Plaintiffs' counsel is discussed more fully *infra*.

Court conditionally granted Plaintiffs' motion to facilitate Section 216(b) notice to hourly plus bonus employees who worked at Defendants' Sunrise location during the past three (3) years.

On January 22, 2007, a Second Amended Complaint was filed, which raised additional claims for "off the clock time," in addition to the miscalculation claim.  As of this date, a total of 147 plaintiffs have joined the case by providing consents to join to Plaintiffs' counsel.

Throughout 2006 and 2007, the parties conducted extensive written and deposition discovery concerning Plaintiff's claims.   Defendants produced several thousand pages of wage and hours records for the Plaintiffs, and the parties deposed over 20 witnesses between May and July 2007.   In addition, virtually all of the opt-in Plaintiffs provided interrogatory answers in which they estimated the number of hours they were seeking in off the clock overtime wages.

On July 24, 2007, the ABN Defendants filed their Motion to Decertify the Collective Action, to which Plaintiffs responded on August 17, 2007.   ABN then filed a motion to dismiss on July 27, 2007, in which it sought to dismiss the claims of all of the Plaintiffs who had failed to respond to discovery.

On August 2 and 3, 2007, the parties mediated the case before James Brown, Esq., in Plantation, Florida.  At the conclusion of the mediation, Plaintiffs filed a Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Partial Summary Judgment. The ABN Defendants filed a response to this motion on August 17, 2007.

Prior to the mediation on August 2, 2007, a settlement was reached with Defendant Strategic, with the Settlement Agreement executed on July 30, 2007. As a result of the

discussions at mediation, Plaintiff and the ABN Defendants reached a negotiated settlement agreement on or about August 30, 2007, which, when combined with the Strategic settlement, will fully and fairly resolve all of the Plaintiffs' claims for alleged unpaid overtime pursuant to 29 U.S.C. 216. The Settlement Agreements attached hereto represent a fair and reasonable compromise of the Plaintiffs' FLSA claims, and the parties now move the Court for approval of the settlement of this action; and to dismiss this action with prejudice.

Plaintiffs' counsel believes that the causes of action, allegations and contentions asserted in the action have merit and that the evidence developed to date supports the causes of action asserted. However, Plaintiffs' counsel also recognizes and acknowledges the expense and uncertainty of the continued lengthy proceedings necessary to prosecute this action through trial and appeal. Plaintiffs' counsel has taken into account the uncertain outcome and risk of continued litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs' counsel further recognizes that there is a potential for the trier of fact to conclude that Plaintiffs are not entitled to relief under the FLSA that would exceed the amounts agreed to in the parties' Settlement Agreement. Plaintiffs' counsel believes that the Settlement Agreement confers substantial benefits upon each of the Plaintiffs, and that a substantial review of the Settlement Agreement by the Court in the approval process will confirm this. Based on a thorough evaluation and discussion with numerous Plaintiffs, Plaintiffs' counsel has determined that the Settlement Agreement is in the best interest of the Plaintiffs.

Defendants have denied and continue to deny that Plaintiffs are entitled to the relief received in the attached Settlement Agreement. Defendants also deny, and

continue to deny, *inter alia*, the allegations that the Plaintiffs have suffered damages by reason of the alleged failure to pay wages for all hours worked, or that Plaintiffs were harmed by any of the conduct alleged in this action.  Defendants have vigorously defended the claims in this action, have moved to decertify the collective action, and are prepared to continue such defense through trial and any appeals.  Nonetheless, Defendants have concluded that the further defense of this action would be protracted and expensive, and that it is therefore desirable that the action be fully and finally settled in the manner and upon the terms and conditions set forth in the Settlement Agreement, in order to limit further expense, inconvenience and distraction.  Like Plaintiffs, Defendants have also taken into account the uncertainty and risks inherent in the continued litigation of this matter.  In light of these considerations, the Defendants have determined that it is desirable and beneficial that the action be settled in the manner and upon the terms set forth in the Settlement Agreement.

## **MEMORANDUM OF LAW**

The Eleventh Circuit requires Court approval for private settlements of overtime claims arising under the FLSA.  *See Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Among the reasons for the requirement of Court approval is that the FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S. Ct. 1437, 1444, 67 L. Ed. 2d 641 (1981).  The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid

minimum wages, or their unpaid overtime compensation, as the case may be. . . ." 29

U.S.C. § 216(b).

Except for two circumstances, the FLSA's provisions are mandatory and are not

subject to bargaining, waiver, or modification by contract or settlement.     *Brooklyn*

*Saings. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945).   These

two circumstances include settled or compromised claims that are (1) supervised by the

Secretary of Labor pursuant to 29 U.S.C. § 216(c) or (2) settlements reviewed and

approved by the court in private actions for back wages under 29 U.S.C. § 216(b).  *See*

*Lynn's Food Stores,*  679 F.2d at 1353.

Before the Court may approve a settlement under the FLSA, it must scrutinize the

settlement to determine whether it is a fair and reasonable resolution of a bona fide

dispute.  As the Eleventh Circuit noted in *Lynn's Food*:

> Settlements may be permissible in the context of a suit brought by employees
> under the FLSA for back wages because initiation of the action by the employees
> provides some assurance of an adversarial context. The employees are likely to be
> represented by an attorney who can protect their rights under the statute. Thus,
> when the parties submit a settlement to the court for approval, the settlement is
> more likely to reflect a reasonable compromise of disputed issues than a mere
> waiver of statutory rights brought about by an employer's overreaching. If a
> settlement in an employee FLSA suit does reflect a reasonable compromise over
> issues, such as FLSA coverage or computation of back wages, that are actually in
> dispute; we allow the district court to approve the settlement in order to promote
> the policy of encouraging settlement of litigation.

*Lynn's Food*, 679 F.2d at 1354.   Thus, if a settlement in an employee FLSA suit reflects

"a reasonable compromise of disputed issues," such as FLSA coverage or computation of

back wages that are "actually in dispute," the court may approve the settlement "in order

to promote the policy of encouraging settlement of litigation."  *Id.* at 1354.  By contrast,

where the employer offers the plaintiff full compensation on his FLSA claim, no

compromise is involved and judicial approval is not required. *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003).

In determining whether the settlement is a fair and reasonable resolution, the court should consider the following factors used in approving the settlement of class actions: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *See Leverso v. SouthTrust Bank of Alabama*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).

As the court noted in *Camp v. The Progressive Corp., et al.*, 2004 U.S. Dist. LEXIS 19172 (E.D. La. 2004), an FLSA collective action,

> The court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. 4 Newberg on Class Actions § 11.41 (4th ed.) (available on Westlaw).
>
> The initial presumption of fairness of a class settlement may be established by showing:
>
> 1. That the settlement has been arrived at by arm's-length bargaining;
>
> 2. That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently;
>
> 3. That the proponents of the settlement are counsel experienced in similar litigation; and
>
> 4. That the number of objectors or interests they represent is not large when compared to the class as a whole.
>
> This initial presumption must then withstand the test of the plaintiffs' likelihood of success. *Id.*

When considering these factors, the court should also keep in mind the "strong presumption" in favor of finding a settlement fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Like the parties, the court should also be mindful that a "settlement is a

compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Lliability Litigation*, 55 F.3d 768, 806 (3d Cir. 1995) (citing *Cotton*, 559 F.2d at 1330).

Applying the above factors, the court in *Camp v. The Progressive Corp*., et al., 2004 U.S. Dist. LEXIS 19172 (E.D.  La. 2004), approved a settlement of an FLSA collective action under which one group of class members received what amounted to approximately 20% of the total value of their claims.  *Camp*, 2004 U.S. Dist. LEXIS, at *23.  In determining that the settlement was reasonable, the *Camp* court undertook a detailed analysis of the risk of decertification, the probability of plaintiffs' success on the merits at trial, and the range of possible recovery.   The *Camp* court also found reasonable the request for costs and attorneys' fees, which amounted to approximately 30% of the settlement.  *Id*., at *58.   In approving the settlement, the court also overruled the written objections of ten plaintiffs, most of which the court found to be "general laments about the perceived unfairness of working long hours for what the objectors now deem to have been low pay.  They have nothing to do with the unemotional legal and factual realities, divorced from sympathy or passion, that this court must consider in making its judgment." *Id*., at *57.

### Awards of Reasonable Attorneys' Fees and Costs

An award of "reasonable attorneys' fee[s] . . . and costs" is mandatory under § 216(b) if the employer is held liable.  Although the court is obligated to award attorneys' fees, Congress's use of the word "reasonable" confers discretion upon the court to determine the amount of fees to be awarded. In determining the reasonableness of attorneys' fees pursuant to a fee-shifting statute, the lodestar generally is recognized as a

reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988).

The party seeking attorneys' fees bears the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualifications and skill. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Further, counsel must "supply the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Satisfactory evidence of the prevailing market rate "at a minimum is more than the affidavit of the attorney performing the work," and must address rates actually billed and paid in similar lawsuits. *Id*. at 1299.

In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination. *See, e.g., Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). This makes sense, as most settlements of collective actions involve a lump sum settlement with an amount to be deducted for attorneys' fees. In such cases, it is necessary for the court to evaluate the overall fairness of the settlement and the benefit to the plaintiffs.

The award of costs is made in accordance with 28 U.S.C. § 1920. *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1169 (S.D. Fla. 2003). In an FLSA

action, it is error for a district court to award costs in excess of those permitted by § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567 (11th Cir. 1988) (district court erred in awarding expert witness fees under § 216(b) that exceeded the amount allowed by § 1920). Likewise, a district court must identify reasons for denying costs to a prevailing party so that the appellate court has some basis to review whether the district court acted within its discretionary power. *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995).

## WHY THE SETTLEMENT SHOULD BE APPROVED

In the case at bar, the Defendants have collectively agreed to pay the following amounts to settle Plaintiff's claims:

Defendant Strategic will pay $100,000.00, inclusive of Plaintiffs' damages, costs and attorneys' fees, while the ABN Defendants will pay $1,150,000.00, inclusive of Plaintiffs' damages, costs and attorneys' fees. These amounts are in addition to both ABN and Strategic's prior unconditional payments of approximately $140,000.00 towards the miscalculation claim raised by the Plaintiffs in the original Complaint. Thus, the total value of the settlement is approximately $1,390,000.00.

In this case, Plaintiffs were represented by competent counsel with extensive experience in FLSA actions, and the settlement amounts set forth in the Agreement were the result of extensive negotiations with counsel for Defendants, as well as discussions with many of the Plaintiffs. Under the standards set forth in *Lynn's Food*, "if a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of wages, that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation."

The initial fairness of the proposed settlement can be established in this case under the factors applied in *Camp*, *supra*. The settlement has been arrived at after a year and a half of litigation, which included extensive discovery, and by arm's-length bargaining, culminating in a two-day mediation conference held August 2 and 3, 2007, as well as an additional month of negotiations. Prior to the mediation, sufficient discovery was taken, including over 20 depositions, which enabled counsel for the parties to thoroughly evaluate the claims for settlement. In addition, Defendants produced several thousand pages of wage and hour records for the Plaintiffs, and most of the Plaintiffs prepared a detailed interrogatory answer in which they estimated the various categories of off the clock time that they worked. The proponents of the settlement are counsel experienced in similar litigation, and have litigated hundreds of FLSA cases and numerous collective actions during their many years of practice.

Having established an initial presumption of fairness as to the settlement, the presumption must also "withstand the test of the plaintiffs' likelihood of success." *Camp*, 2004 U.S. Dist. LEXIS 19172, at *24-*25.  Given the estimated likelihood of success at trial, the settlement can be distributed in such a manner that each Plaintiff receives an individual award that is fair, adequate and reasonable.

Based on the amounts paid by the Defendants, and the value of each of the Plaintiffs' off the clock claims as stated in their interrogatory answers, Plaintiffs' counsel has proposed what they believe to be a fair and equitable distribution of the settlement monies to each of the Plaintiffs, which is set forth on Exhibit 4 to this Motion.

The settlement funds have been allocated so that each of the Plaintiffs will recover virtually 100% on the miscalculation claims raised in the initial Complaint, with

an equal amount in liquidated damages, and approximately 18% of the alleged off the clock claims raised in the Second Amended Complaint, including liquidated damages.

**Proposed claims procedure**

In order to efficiently administer the approval process, the parties propose a claims procedure, under which each of the opt-in Plaintiffs will be notified in writing of their individual recovery and given a reasonable period time within which to discuss the proposed allocation with counsel.   If the individual Plaintiff approves the amount allocated to them, they can then execute the Individual Release Agreement. A copy of the proposed Individual Release Agreement is attached hereto as Exhibit 3.

The parties seek the Court's conditional approval of this claims procedure so that each Plaintiff will receive written notice of the funds allocated to their individual claims, and an opportunity to accept the settlement after discussing any concerns with their counsel, by executing an Individual Release Form.   Thereafter, and within a reasonable period of time, Plaintiffs' counsel will notify the Court of the number of Plaintiff's who have accepted the settlement, and whether there are any objections to the settlement, so that the Court can decide whether a fairness hearing is necessary.    If the claims process is conditionally approved by the Court, Plaintiffs' counsel believe they can administer the claims process within 14 days, after which a status report will be filed, notifying the Court of the number of Plaintiffs who have accepted the settlement, and whether there are any objectors.    Assuming that the vast majority or all of the Plaintiffs accept the proposed settlement – which Plaintiffs' counsel believes will be the case -- the Court may be able to dispense with the need for a fairness hearing and enter the parties' proposed order approving the settlement and dismissing the case.

### Miscalculation claim

As to the miscalculation claim, each of the Plaintiffs will receive a full recovery, including liquidated damages, based on the ABN Defendants' and Strategic's recalculations of the regular hourly rates to include their non-discretionary bonuses. These calculations were based on the number of hours for which the Plaintiffs were paid, as listed on their wage and hour records.   A number of Plaintiffs have already received checks for their miscalculation claims, since Defendants voluntarily tendered the payments soon after the initial Complaint was filed.  The remaining Plaintiffs will also receive checks based on the Defendants' calculations, to be drawn on the settlement funds from both Defendants.  A chart is appended to the ABN Settlement Agreement (Exhibit 1) showing the amount that the ABN Defendants have already been paid to the Plaintiffs on the miscalculation claim, and a chart showing Strategic's payments is attached hereto as Exhibit 5.  The remaining amounts to be paid on the miscalculation claim are shown in Plaintiff's allocation chart, attached as Exhibit 4.  In addition, the ABN Defendants have agreed to reissue some checks that were not initially cashed and which have since expired.

### Off the clock claims

Based on the Plaintiffs' proposed allocation schedule attached as Exhibit 4, the "hourly plus bonus" Plaintiffs will also be entitled to a distribution based on their estimated "off the clock" hours during their actual weeks worked, within the applicable statute of limitations for each of their claims.   Each Plaintiff will be paid based on the assumption that their interrogatory answers are a just and reasonable inference of their off the clock hours; however, the total value of each of their claims (including liquidated

damages) has been adjusted downward by approximately 82%, to reflect a 18% chance of success of a full recovery for all of the estimated off the clock hours.  Viewed another way, under the proposed allocations, each Plaintiff will recover 36% of what they should have been paid by Defendants for their off the clock hours.

The 82% reduction was arrived at after a careful weighing by Plaintiffs' counsel of all of the factors that could potentially impact Plaintiffs' recovery at trial.  Perhaps the most significant factor considered was the likelihood that the case would be decertified before trial, and that the Plaintiffs might each have to pursue individual claims in the event of decertification.  Although Plaintiffs opposed the ABN Defendants' motion for decertification, Plaintiffs' counsel concedes that the ABN Defendants made strong arguments, supported by record evidence, that the opt-in Plaintiffs were not similarly-situated with respect to a number of factors.  This was particularly true with respect to Plaintiff's off the clock claims, since their estimates of their off the clock hours varied significantly, even among Plaintiffs who worked in the same department and for the same supervisor, and they described several different categories of off the clock time that they worked.  In addition, Defendants produced wage and hour records showing that the Plaintiffs worked and were paid for some overtime hours, and none of the Plaintiffs had any documents or other evidence regarding their off the clock hours or any complaints about having to work such hours, other than their own recollection and testimony.

Although Plaintiffs' counsel believe that most of the opt-in Plaintiffs could establish at trial that they worked some off the clock hours, if the case was decertified, each of the Plaintiffs would have had to proceed separately, assuming they chose to do so and could find counsel willing to accept their cases.   This would result in significant

delays, expense and increased risk at trial.    In addition, during the discovery process, it was revealed that the ABN Defendants sold their mortgage division to Citigroup in late 2006 and the Sunrise office where the Plaintiffs worked is scheduled to close before the end of 2007.  This would have made it even more difficult to try the cases individually if the case was decertified, since many of the witnesses might no longer be available.   Even if each and every one of the Plaintiffs managed to bring individual claims after decertification, it is inconceivable that each and every one of them would prevail and recover damages.   In contrast, under the terms of the proposed settlement, each of the 117 opt-in Plaintiffs with off the clock claims will receive a recovery.

In addition to the likelihood of decertification, Plaintiffs counsel considered the probability of Plaintiffs' success on the merits if the case proceeded to trial as a collective action.   The primary concern here was the lack of documentary evidence concerning the specific number of off the clock hours that the Plaintiffs claimed to have worked.

Under the Supreme Court's holding in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946), if employees work for an employer which has failed to keep accurate or adequate time records, and the employees provide some credible evidence that they worked overtime hours without pay, the employees can recover their claimed hours without providing specific evidence of the exact number of hours worked.  *Id.; Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 471 (11th Cir. 1982). The employees need only submit sufficient evidence to support a "just and reasonable inference" that they worked unpaid overtime hours to the extent claimed. *Mt. Clemens,* 328 U.S. at 687.

Although each of the Plaintiffs prepared an interrogatory answer in which they

estimated the number of off the clock hours they worked, Plaintiffs' counsel believes it would have been difficult to prove all of those hours at trial, even under the *Mt. Clemens* standards. As Defendant ABN argued in its motion for decertification, the Plaintiffs varied widely in their estimates, and some of them provided conflicting deposition testimony regarding the overtime practices by the same supervisor within the same department. Some Plaintiffs adjusted their estimates after being provided with wage and hour records showing the overtime hours for which they were admittedly paid, while others declined to adjust their numbers in the face of such information. In addition, Defendants produced documents that undermined some of the Plaintiffs' estimates, including remote computer access records, security swipe records and computer log on records. Given the inconsistent and sometimes conflicting evidence of the off the clock hours, and the lack of documentary evidence to support the Plaintiffs' estimates, counsel anticipated that the fact finder at trial would reduce the number of hours claimed by each of the Plaintiffs, and perhaps significantly. Thus, Plaintiffs' counsel believes that the 82% reduction of the alleged off the clock time represents a fair distribution to each of the Plaintiffs, as can be seen from Plaintiff's allocation schedule attached as Exhibit 4.

A final factor considered by Plaintiffs' counsel in arriving at the 82% reduction was Defendants' good faith defenses and the likelihood of recovering liquidated damages at trial. Section 216(b) of the FLSA authorizes liquidated damages in an amount equal to unpaid overtime. However, an employer shall not be liable if the employer can prove that it acted in good faith and with reasonable grounds for believing it was not violating the FLSA. *Id.* In this case, Defendants produced evidence that they were arguably acting in good faith with respect to the payment of overtime wages to the Plaintiffs. That

evidence includes wage and hour records showing that, at times, substantial amounts of overtime was paid to the Plaintiffs, and discovery did not reveal any written complaints to Defendants' managers regarding overtime issues, which would have put them on notice that overtime was being worked off the clock.  In addition, ABN had written policies and procedures that required supervisor approval before overtime could be worked, and based on their deposition testimony, some of the Plaintiffs may have had difficulty establishing their supervisors' actual or constructive knowledge of the off the clock hours they claimed to have worked.   Given this evidence, Plaintiffs' counsel was concerned that even if the Plaintiffs prevailed at trial on their off the clock claims, liquidated damages might not have been awarded as part of the recovery.[2]

When all of the above risk factors are considered in their totality, the 82% reduction is a reasonable reflection of the likelihood of success at trial, assuming the Plaintiffs' claims survived decertification.  The Court should therefore approve the 18% recovery allocated to each of the Plaintiffs on their off the clock claims.

In addition to the above distributions, it is further proposed that the class representatives and some of the other Plaintiffs receive incentive payments for their participation in the litigation, as follows:  (1) $2,500.00 Sherri Adams as lead class representative and for her significant participation in the case as liaison to the other class members, as well as for her assistance in preparing for depositions and mediation;  (2) $1,000.00 each to Stacy Cameron, Vernell Roberts and Cheryl Soto as class representatives; (3) $1,000.00 to each of the seventeen Plaintiffs who gave depositions and $500.00 to each of the class members who were present for their depositions, but

---

[2]   An additional benefit of recovering liquidated damages under the settlement is that the Plaintiffs will not be subject to federal withholding tax on that portion of their recovery.

were canceled because of counsels' unintentional misjudgment of time; (4) $2,500.00 each to Sherry Adams and Gail Harris for their attendance at mediation.   *See Camp*, 2004 U.S. Dist. LEXIS 19172, at *26 (noting that "federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation") (citations omitted).   In the case at bar, the additional amounts awarded to the class representatives and other Plaintiffs are reasonable.   The named Plaintiffs and deposed Plaintiffs provided invaluable assistance to Plaintiffs' counsel and their heightened participation directly benefitted the other opt-in Plaintiffs as a whole.

Finally, Plaintiffs' counsel seeks litigation expenses and attorneys' fees in the amount of $402,036.59.   The parties agree the amount sought for costs and fees – which amounts to approximately 29% of the settlement proceeds -- is reasonable and supported by the appropriate documentation.   Plaintiffs' counsel will file a separate motion supporting their fee request, within five (5) days of the filing of the instant motion. Based on their current review of their time records, Plaintiffs' counsel believes the amount sought herein for costs and fees is less than the lodestar

In sum, the Settlement Agreement submitted by the parties for the Court's approval represents a reasonable compromise of the Plaintiffs' claims, including FLSA liability and computation of back wages, which were actually in dispute.  The Agreement should therefore be approved by the Court.

## CONCLUSION

For the foregoing reasons, the parties respectfully request to conditionally approve the parties' proposed claims procedure, approve the attached Settlement Agreements and

the award of attorneys' fees and costs to Plaintiffs' counsel, and enter the parties'

proposed Order of Dismissal.

Dated:  September 20, 2007

Respectfully submitted,

By:       s/Robert S. Norell
          Robert S. Norell, Esq.(Fla. Bar No. 996777)
          E-Mail: robnorell@aol.com
          ROBERT S. NORELL, P.A.
          7350 NW 5th St.
          Plantation, FL 33317
          Tel.: (954) 617-6107
          Fax: (954) 617-6018
          Attorney for Plaintiffs Adams, et al

By:       s/Jeffrey K. Ross
          Jeffrey K. Ross
          Seyfarth Shaw LLP
          Counsel for Defendants ABN, et al
          131 South Dearborn, Suite 2400
          Chicago, Illinois 60603
          Tel: (312) 460-5896
          Fax: (312) 460-7896
          Email: jross@seyfarth.com
          E-Mail: JRoss@Seyfarth.com

By:       s/ Angelo M. Filippi
          Angelo M. Filippi, Esq.
          Kelly Kronenberg et al
          Counsel for Defendant Strategic Staffing, Inc.
          8201 Peters Road, Suite 4000
          Fort Lauderdale, Florida 33324
          Tel.:  (954) 370-9970
          Fax:  (954) 382-1988
          E-Mail: afilippi@kelleykronenberg.com